■ ORBIMED ADVISORS, LLC, as Representative of the Former Stockholders of Biosynexus, Inc., Respondent, v QVT FUND LP, Appellant, et al., Defendant. [898 NYS2d 140]—

Order, Supreme Court, New York County (Ira Gammerman, J.H.O.), entered November 18, 2009, which denied defendant QVT Fund LP's motion to dismiss the complaint, unanimously affirmed, with costs.

Plaintiff Orbimed, on behalf of the former stockholders of Biosynexus, Inc., a closely held biopharmaceutical company, seeks a declaration that it is entitled to money in an escrow account pursuant to an agreement that merged Biosynexus into defendant QVT. The merger agreement contained an indemnification clause requiring the stockholders to indemnify QVT for damages relating to any breach of the warranties and representations contained in the merger agreement. The indemnity provision limited the stockholders' liability to the escrow amount and provided that indemnity was available only if damages exceeded $250,000. However, to recover under the indemnity provision, QVT had to "deliver a Claim Notice to the Indemnifying Party," triggering the indemnifying party's requirement to deliver a response within 20 days, after which the parties would use a 30-day period within which to make good faith efforts to resolve the dispute. The indemnity provision expired one year from the closing date, but provided: "If an Indemnified Party delivers to an Indemnifying Party, before expiration of a representation or warranty, either a Claim Notice based upon a breach of such representation or warranty, or

an Expected Claim Notice based upon a breach of such representation or warranty, then the applicable representation or warranty shall survive . . . ."

The merger agreement defined "Claim Notice" as a: "written notification which contains (i) a description of the Damages incurred or reasonably expected to be incurred . . . and the Claimed Amount of such Damages, to the extent then known, (ii) a statement that the Indemnified Party is entitled to indemnification under Article VI for such Damages and a reasonable explanation of the basis therefor, and (iii) a demand for payment in the amount of such Damages."

The merger agreement defined "Expected Claim Notice" as "a notice that, as a result of a legal proceeding instituted by or written claim made by a third party, an Indemnified Party reasonably expects to incur Damages for which it is entitled to indemnification under Article VI." Additionally, the merger agreement provided that "[a]ll notices . . . hereunder shall be in writing." Finally, the merger agreement provided that "[t]his Agreement (including the documents referred to herein) constitutes the entire agreement among the Parties and supersedes any prior understandings, agreements or representations by or among the Parties."

Within one year, QVT delivered a letter to Orbimed advising that it was making an indemnification claim based on Biosynexus's false representations and breached warranties regarding a certain license it had with a third party and the manufacturing costs, market potential and effectiveness of a certain drug Biosynexus had sought to develop.

Orbimed's complaint for declaratory relief alleges that QVT's letter is not compliant with the merger agreement's requirements of a claim notice or expected claim notice and that QVT did not incur damages in excess of $250,000. QVT's motion, purportedly one to dismiss the complaint pursuant to CPLR 3211 (a), but which "should be taken as a motion for a declaration in [QVT's] favor and treated accordingly" (Siegel, NY Prac § 440, at 745 [4th ed]), asserts to the contrary.

We cannot say as a matter of law that QVT's letter complies with the merger agreement's requirements that a claim notice contain a "description" of the damages incurred or expected to be incurred and a "reasonable explanation" of the basis for the claim. We can say that the letter does not identify the warranties or representations made in the merger agreement, or any other document delivered pursuant to the merger agreement, that were breached; does not identify the section of or manner in which the license was breached; and does not identify any

"legal proceeding" or "written claim" by a third party, terms that are part of the definition of an expected claim notice. That Orbimed may at all relevant times have been aware of these particulars does not negate the contractual requirement of written notice (*cf. MRW Constr. Co. v City of New York*, 223 AD2d 473, 473 [1996], *lv denied* 88 NY2d 803 [1996]). That Biosynexus may have been in breach of the license at the time it entered into the merger agreement is irrelevant to whether QVT gave proper notice of that breach for purposes of indemnification under that agreement.

Moreover, even if QVT's letter were a proper claim notice or expected claim notice, in order to recover under the indemnification clause, QVT must prove that it sustained damages of more than $250,000. In the present context, that would require conclusive documentary evidence of damages (CPLR 3211 [a] [1]), that QVT fails to submit. We reject QVT's argument that, with respect to the issue of damages, a "judicial admission" Orbimed made in its (now withdrawn) claim against Biosynexus's former attorneys, binds Orbimed. The $11 million in damages that Orbimed sought against the attorneys was based on the amount that QVT is seeking and withholding by not allowing disbursement of the $11 million escrow fund. This was not an admission that QVT or Orbimed actually sustained these damages. Indeed, Orbimed's allegations against the attorneys— "[i]f there was a breach of the representations and warranties in . . . the Merger Agreement . . . , [such] was due to the negligence and malpractice of [the attorneys]"—were plainly cast as a hypothetical alternative (*see* CPLR 3014, 3017 [a]), in much the manner of a third-party claim.

We have considered QVT's other arguments and find them unavailing. Concur—Tom, J.P., Sweeny, Catterson, Moskowitz and DeGrasse, JJ.